**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SIERRA CLUB,<br>2101 Webster Street #1300<br>Oakland, CA 94612 | **COMPLAINT FOR DECLARATORY**<br>**AND INJUNCTIVE RELIEF** |
|        Plaintiff, | |
|        v. | Case No.: 1:17-cv-1906 |
| UNITED STATES ENVIRONMENTAL<br>PROTECTION AGENCY,<br>1200 Pennsylvania Avenue N.W.,<br>Washington, DC 20460 | |
|        Defendant. | |

## INTRODUCTION

1.     In this action, Sierra Club, the nation's oldest and largest grassroots environmental organization, challenges the U.S. Environmental Protection Agency's ("EPA") unlawful failure to respond to Sierra Club's public records requests for external communications and schedules of EPA Administrator Scott Pruitt and several senior agency staff.  Sierra Club seeks declaratory, injunctive, and any other appropriate relief to remedy EPA's failure to respond to Sierra Club's requests as well as the agency's improper withholding of requested records, in violation of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and, or alternatively, the Administrative Procedure Act  ("APA"), 5 U.S.C. §§ 701-06.

2.     EPA's longstanding mission is straightforward: protect human health and the environment.  *See, e.g.*, 33 U.S.C. § 1251(a); 42 U.S.C. §§ 6901(b), 7401(b). Under the leadership of Mr. Pruitt, however, EPA has been shirking that core duty in favor of an agenda to roll back crucial environmental and public health protections. It is widely reported that Mr. Pruitt and his inner circle of senior political staff at the agency appear to be relying, in their

1

deregulatory efforts, to an inappropriate extent on input from representatives of the industries

regulated by EPA—notably, the fossil fuel industry and the mining industry—which stand to

benefit financially from decreased oversight. At the same time, EPA leadership has reportedly

excluded EPA's career staff—dedicated civil servants who possess essential scientific and policy

experience and expertise—from major regulatory decision-making to an unprecedented degree.

Indeed, career staff's access to Mr. Pruitt, and their knowledge of his whereabouts and plans,

have been restricted. Further, even when staff have been present in meetings with the senior

leadership, they have sometimes been instructed not to take notes—perhaps in hopes of

preventing the kind of paper trails that have previously earned Mr. Pruitt criticism.  For instance,

documents obtained through Oklahoma's open records statute revealed that Mr. Pruitt, in his

former capacity as that state's attorney general, communicated intimately with the fossil fuel

industry and at times directly adopted the talking points that industry representatives provided to

the attorney general's office.

3.      In light of the troubling apparent practices at EPA, Sierra Club submitted FOIA

requests to EPA concerning Mr. Pruitt and other senior agency staff.  Sierra Club sought records

pertaining to communications and meetings between those individuals, on the one hand, and

persons or groups outside of EPA, on the other hand, as well as the individuals' calendars.  Sierra

Club requested these records in order to shed light on secretive and potentially improper efforts

by Mr. Pruitt and his core political team to nullify critical, lawful EPA regulations and policies.

4.      Sierra Club's requests further its long-standing interest in the protection of our

nation's natural resources and public health, as well as its interest in government accountability

and transparency in connection with those critical issues.

5.      Sierra Club submitted the requests at issue in this Complaint in mid-June 2017.

To date, however, EPA has neither produced any responsive records to Sierra Club, nor even provided Sierra Club with statutorily required determinations regarding whether, to what extent, or when the agency will comply with Sierra Club's requests—nor even good-faith estimates of when such threshold determinations may be belatedly forthcoming.

6.     EPA is obligated to make compliance determinations within 20 working days of receiving FOIA requests, presumptively; or within 30 total working days upon providing a statutorily prescribed notice (which EPA has not provided) that both describes certain unusual circumstances warranting an extension and identifies a date within that 10-day extended period by which the required compliance determination is expected. 5 U.S.C. § 552(a)(6). In either case, EPA has blown well past the applicable statutory deadlines and continues to flout its legal obligations—despite receiving multiple inquiries from Sierra Club regarding the status of its requests, along with a courtesy notice of violation in early August 2017 indicating Sierra Club's intent to sue if the agency failed to promptly come into compliance with the law.

7.     Sierra Club therefore brings this suit in order to hold EPA accountable under the law. As discussed below, Sierra Club respectfully requests that the Court order EPA to fulfil its statutory obligations and promptly begin producing responsive, non-exempt records that the agency is withholding in violation of FOIA and/or the APA.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) as well as 28 U.S.C. § 1331.

9.     Venue in this forum is proper pursuant to 5 U.S.C. § 552(a)(4)(B), which provides for the hearing of FOIA cases in, among other proper venues, the district in which responsive records may be found, and in the District of Columbia. Venue is also proper under 28 U.S.C.

§ 1391.

10.     Declaratory relief is appropriate under 28 U.S.C. § 2201.

11.     Injunctive relief is appropriate under 5 U.S.C. §552(a)(4)(B) as well as 28 U.S.C.

§ 2202.

## **PARTIES**

12.     Plaintiff Sierra Club is incorporated in the State of California as a Nonprofit

Public Benefit Corporation with its headquarters located at 2101 Webster Street, #1300,

Oakland, CA 94612. Founded in 1892, Sierra Club is the country's oldest grassroots

environmental organization. It is also the largest, with more than three million members and

supporters nationwide. Sierra Club is dedicated to protecting and preserving the natural

environment and the human environment. Its core purposes include exploring, enjoying, and

protecting the wild places of the earth; practicing and promoting the responsible use of the

earth's ecosystems and resources; and educating and enlisting humanity to protect and restore the

quality of the natural and human environments.

13.     Sierra Club is a leading non-governmental organization that seeks to educate and

mobilize the public on issues of climate change, fossil fuel energy, clean energy, clean air, and

clean water, and to promote government accountability and transparency in connection

therewith. Sierra Club has long conducted multiple public campaigns around these issues,

including its Beyond Coal Campaign and Dirty Fuels Campaign. Sierra Club regularly submits

FOIA requests as part of its mission and work. Sierra Club broadly and publicly disseminates the

information it receives from FOIA requests so as to further the public's understanding about how

our government's operations and activities bear on important issues such as human health, the

environment, and our government's faithful execution of related laws.

4

14.     Sierra Club brings this action on its own behalf and on behalf of its members.

Sierra Club and its members have been, are, and will continue to be injured by EPA's unlawful

failures to provide requested records and compliance determinations regarding the same, as

mandated by FOIA (or, alternatively, the APA). The relief requested herein will redress those

injuries.

15.     Defendant EPA is an agency of the executive branch of the United States

government within the meaning of 5 U.S.C. § 551(1). EPA is responsible for implementing

various federal environmental and public health laws. Its headquarters are located at 1200

Pennsylvania Avenue N.W., Washington, DC 20460. EPA has in its possession and control

records sought by Sierra Club and, as such, is subject to FOIA pursuant to 5 U.S.C. § 552(f).

## STATUTORY FRAMEWORK

16.     The fundamental purpose of FOIA is a crucial, eminently American one: to

promote transparency and accountability in government.  To that end, FOIA requires that federal

executive agencies release all documents and other records in their possession upon request by a

member of the public, except records that fall under one of the statute's narrowly-construed

exemptions. 5 U.S.C. § 552(a)-(b).

17.     To ensure that FOIA's guarantee of access to public records is practically

meaningful, not merely theoretical, Congress provided explicit timelines by which agencies must

respond to and comply with FOIA requests. Within 20 working days of receiving a FOIA

request, an agency must "determine . . . whether to comply" with the request and "immediately

notify" the requester of "such determination and the reasons therefor." 5 U.S.C.

§ 552(a)(6)(A)(i)(I).  If an agency determines that it will comply with a request, the agency must

"promptly" make available all responsive, non-exempt records to the requester. *Id.*

§ 552(a)(6)(C)(i).

18.     The agency may unilaterally obtain a 10-working-day extension of that deadline by providing written notice to the requester if certain statutorily-specified "unusual circumstances" exist preventing an agency from providing the aforementioned compliance determination within the presumptive 20-working-day time limit. 5 U.S.C. § 552(a)(6)(B)(i). Such a notice must specify which unusual circumstances apply, and must also must identify a date within the 10-day extended period by which the agency expects to deliver the compliance determination. *Id.* The "unusual circumstances" that can permit such an extension are (I) the need to search for and collect records from facilities outside the processing office; (II) the need to search for, collect, and appropriately examine a voluminous amount of records; or (III) the need for speedy consultation with another interested agency. *Id.* § 552(a)(6)(B)(iii). The statute makes clear, however, that the agency may not unilaterally extend the deadline to provide its determination about whether it will comply by more than ten working days. *Id.* § 552(a)(6)(B)(i). In other words, even when an agency faces "unusual circumstances" and provides written notice thereof, FOIA mandates that the agency nevertheless provide a compliance determination to the requester within 30 total working days of the agency's receipt of the request. *Id.*

19.     If an agency fails to comply with that statutory timeframe, the requester is deemed to have exhausted her administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i). Notably, that remains the case even if the agency had decided and communicated that a request could not be processed within even the 30-working-day extended time, and had asked the requester to limit the scope of the request or sought to arrange an alternative timeframe for processing the request. *Id.*; *see also id.* § 552(a)(6)(B).

20.     At this point, a requester who still has not received the statutorily-required

compliance determination may bring suit to compel the agency to supply a determination and to produce withheld records. 5 U.S.C. § 552(a)(6)(C)(i); 28 C.F.R. § 16.8(e). The agency may then attempt to prove to the court that "exceptional circumstances" exist—that is, exigencies even beyond the "unusual circumstances" expressly contemplated by the statute—and to show also "that the agency is exercising due diligence in responding to the request." 5 U.S.C. § 552(a)(6)(C)(i). If the agency succeeds in making such a showing, "the court may retain jurisdiction and allow the agency additional time to complete its review of the records." *Id.* § 552(a)(6)(C)(i). As a general matter, the court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." *Id.* § 552(a)(4)(B).

21.    A reviewing court shall determine *de novo* these questions of compliance, extenuating circumstances, and the (im)propriety of withholding records; and the agency bears the burden of justifying its actions (or inaction). 5 U.S.C. § 552(a)(4)(B).

22.    In addition or in the alternative to FOIA, an agency's response to a FOIA request is subject to judicial review under the APA. The APA generally confers a right of judicial review on any person who is adversely affected by agency action. 5 U.S.C. § 702. The APA requires courts to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1), and to set aside any agency action that is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law," *inter alia, id.* § 706(2)(A), (C), (D).

## STATEMENT OF FACTS
### *Mr. Pruitt and EPA's Troubling Practices in Seeking to Roll Back Key Regulatory Protections*

23.    Before becoming EPA Administrator, Scott Pruitt served as Attorney General for

the State of Oklahoma, where he was well known for his close ties to the fossil fuel industry.  As

Oklahoma Attorney General, Mr. Pruitt frequently sued EPA in nationally prominent attempts to

cancel, weaken, or prevent federal regulations meant to safeguard public health and the

environment. Previous open records requests as well as multiple reports in the media have

indicated that, in doing so, then-Attorney-General Pruitt received support from, closely consulted

with, and advocated on behalf of members and representatives of the fossil fuel industry.

24.     On December 8, 2016, President-elect Donald Trump nominated Mr. Pruitt to

head his administration's EPA.  The United States Senate confirmed Mr. Pruitt as EPA

Administrator on February 17, 2017.

25.     As EPA Administrator, Mr. Pruitt has continued to advance policies beneficial to

the fossil fuel industry. Mr. Pruitt's EPA has worked to roll back, delay, or otherwise nullify

dozens of critical health and environmental rules since taking office.  In doing so, Mr. Pruitt and

his core team of political appointees have appeared to rely to an unprecedented and possibly

improper degree on input from fossil fuel executives, lobbyists, lawyers, and other industry

allies—continuing the disproportionately intimate ties to industry and the deregulatory agenda

that Mr. Pruitt embraced as Oklahoma's Attorney General.

26.     In conjunction with attempts to dismantle rules and practices that serve to protect

human health and natural resources across the United States, Mr. Pruitt and his inner circle of

political staff at EPA have apparently been implementing secretive and closed-door policies that

imprudently reduce transparency about the agency's operations and activities. On information

and belief, these individuals—Mr. Pruitt and other senior staff who are the subjects of Sierra

Club's FOIA requests—have reached out to industry representatives for input on proposed

changes without seeking commensurate input from other constituencies. At the same time, career

staff are believed to have been uniquely restricted from meeting with EPA leadership; instructed to provide *post hoc* justifications for politically motivated, statutorily indefensible policy outcomes; and directed not to take written notes, in frustration of federal recordkeeping obligations. Meanwhile, at leadership's directive, the public no longer has access to information that EPA once made publicly available. (Perhaps most conspicuously in that vein, EPA has removed from its website formerly prominent information about climate change—a phenomenon that, the scientific consensus warns, gravely impacts public health and the environment, but that tends to pressure Mr. Pruitt's supporters in the fossil fuel industry to reduce carbon emissions.)

27.     Given the extraordinary and unforthcoming actions and practices at EPA, the public has been compelled to submit a commensurately large number of FOIA requests to the agency, in attempt to gain insight into the agency's operations and decision-making processes.

28.     When EPA has engaged with FOIA requesters in recent months—occasions that have been untimely and infrequent on the whole—the agency has typically provided a terse, legally inadequate response: that EPA cannot comply with FOIA's timelines and mandates due to an increased volume of requests, and cannot even provide an estimate of when the agency will begin to comply. To be sure, EPA could seek to address that problem (taking the agency's word for it) by dedicating greater attention or resources to responding to FOIA requests in a lawful fashion, and/or by improving the transparency of its operations so as to reduce the number of requests necessitated in the first place. Instead, EPA has chosen to engage in a pattern of unlawfully rebuffing, or vaguely and indefinitely delaying response to, FOIA requests from a variety of public-interest requesters, including Sierra Club.

### *Sierra Club's FOIA Requests and EPA's Failure to Respond as Statutorily Required*

29.     In furtherance of Sierra Club's ongoing national efforts to address air pollution,

water pollution, climate change, and other pressing environmental and public health problems,

and to promote government accountability and transparency, Sierra Club submitted several FOIA

requests to EPA meant to shed light on the apparent troubling practices at the agency.

30.     Sierra Club submitted the first of the four FOIA requests at issue in this

Complaint on June 14, 2017 (request attached hereto as Exhibit A). The request sought

communications between Mr. Pruitt and anyone from outside EPA (including any logs of such

communications); Mr. Pruitt's calendars; sign-in sheets or other records memorializing

attendance at any meetings attended by Mr. Pruitt and anyone from outside EPA; and any deleted

yet recoverable communications that match the foregoing specifications. To help narrow the

request and reduce EPA's FOIA burden, Sierra Club limited its request to communications with

persons outside of EPA, and specifically excluded communications to or from persons employed

elsewhere within the federal Executive Branch, persons employed by any state's executive

branch, and any persons who have a contract to provide consulting or other services to EPA.

Moreover, Sierra Club also specifically excluded any records already publicly available. The

request stated that it sought all responsive, non-exempt records dating from February 17, 2017—

the date of Mr. Pruitt's confirmation as EPA Administrator—through the present.

31.     EPA acknowledged receipt of that first request the same day it was submitted

(June 14, 2017), and assigned it with the tracking number EPA-HQ-2017-008402.  EPA was thus

required under FOIA to provide Sierra Club with a determination about whether it would comply

with the request by July 13, 2017—*i.e.*, 20 working days from the agency's receipt of the

request—short of gaining a 10-day extension by providing notice to Sierra Club of certain

statutory "unusual circumstances" prevented the agency from timely making a determination,

along with a date, within the 30-total-day window, by which EPA expected to supply a

10

determination. 5 U.S.C. § 552(a)(6)(B). EPA never provided such a notice—and even supposing hypothetically that it had, EPA's extended deadline to provide a determination would have been July 27, 2017.

32.     A few days later, Sierra Club submitted three additional FOIA requests to EPA, similar to the first but instead pertaining to certain members of Mr. Pruitt's senior and personal staff, rather than directly to Mr. Pruitt (requests attached hereto as Exhibits B, C, and D, respectively). These three new requests, each submitted on June 19, 2017, were analogous to Sierra Club's June 14 request: in a word, they sought, for the same time period (*i.e.*, February 17, 2017, through the present): (1) the respective external communications and calendars of EPA Chief of Staff Ryan Jackson and EPA Associate Administrator Samantha Dravis, whom Mr. Pruitt appointed as leaders of EPA's new self-proclaimed deregulatory "task force"; (2) external communications by/with Mr. Pruitt's scheduling and advance personnel, Milan Hupp and Sydney Hupp, and calendars of Mr. Pruitt they may possess; and (3) communications between EPA Senior Policy Advisor Mandy Gunasekara and specifically-identified member groups of the National Mining Association, as well as her calendars.

33.     EPA acknowledged receipt of those three requests the same day they were submitted (June 19, 2017), and assigned them the following tracking numbers: EPA-HQ-2017-008568 (re: Jackson and Dravis); EPA-HQ-2017-008571 (re: M. Hupp and S. Hupp); and HQ-2017-008581 (re: Gunasekara). Thus, as discussed analogously above with respect to Sierra Club's June 14 request, EPA was required to make compliance determinations vis-à-vis each of Sierra Club's three June 19 requests by July 18, 2017 (*i.e.*, 20 working days from the agency's receipt of the requests). Again, however, EPA provided no such determinations, nor any statutorily-prescribed notice of unusual circumstances. Moreover, even if EPA had presented

Sierra Club with notice of unusual circumstances and an expected date of compliance, seeking a 10-working-day extension on its deadline to respond (which it did not), EPA's compliance determinations on the three June 19 requests still would have been due by August 1, 2017.

34.     In July, not having received any compliance determination vis-à-vis any of its four June requests, Sierra Club repeatedly followed up with the agency to ask about the statuses of the pending requests—specifically, inquiring on July 19, 2017, July 24, 2017, and again on July 25, 2017. Sierra Club received no response. (Also in July, Sierra Club submitted certain follow-up FOIA requests—not at issue in the instant Complaint—that sought largely the same records described in the June requests, yet for an updated time period. Notably, EPA has likewise failed to provide Sierra Club with statutorily compliant responses to those requests. The July requests are omitted from this Complaint, however, pending administrative resolution of EPA's baseless and inconsistent denial of Sierra Club's fee waiver requests in connection with the July requests only.)

35.     On August 9, 2017, in light of the agency's continued unresponsiveness, Sierra Club sent a courtesy Notice of Violation letter to EPA demanding compliance with FOIA vis-à-vis the June requests no later than August 31, 2017—*i.e.*, more than a month after the agency's statutory deadlines to respond.  The Notice of Violation letter further advised that Sierra Club would bring legal action against EPA if the agency failed timely to comply with FOIA's obligations in connection with Sierra Club's outstanding requests.

36.     Since that time, EPA has responded to Sierra Club with emails regarding its outstanding requests in which the agency has stated essentially that it faces a large number of FOIA requests, that it is working diligently to respond as quickly as possible, and that it cannot estimate a date by which it will provide even threshold compliance determinations in response to

Sierra Club's requests. None of those communications have provided Sierra Club with any indication whether EPA intends to comply with Sierra Club's requests or even an approximate date by which the agency would provide such determination—let alone any records responsive to Sierra Club's requests.

37.     In sum, notwithstanding the mandatory procedures and deadlines that Congress explicitly provided in FOIA, EPA has not provided Sierra Club with compliance determinations regarding any of its June requests, nor even provided an estimate when such determinations are expected to be made, nor produced any responsive, non-exempt documents.

38.     In light of the agency's failures to respond as lawfully required, Sierra Club is now forced to bring this lawsuit in order to vindicate its legal rights and hold EPA accountable to the public.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552

39.     Sierra Club re-alleges and incorporates by reference all the foregoing paragraphs in this Complaint as though fully set forth herein.

40.     EPA was statutorily obligated to respond to Sierra Club's FOIA requests dated June 14, 2017, and June 19, 2017, by July 13, 2017, and July 18, 2017, respectively, with determinations of whether the agency would comply with each request. 5 U.S.C. § 552(a)(6)(A)(i).

41.     EPA has failed to provide Sierra Club with compliance determinations regarding Sierra Club's requests, in violation of FOIA.

42.     EPA is statutorily obligated to timely provide FOIA requesters with non-exempt records that are responsive to their requests. 5 U.S.C. § 552(a)-(b).

43.     EPA has failed to produce to Sierra Club any documents responsive to Sierra

Club's request, in violation of FOIA.

44.     EPA's aforementioned failures find no justification in FOIA, in EPA's FOIA-implementing regulations, or in applicable jurisprudence.

45.     In light of EPA's failures, Sierra Club is entitled promptly to receive from EPA all records that are responsive to its requests and not exempt under FOIA's statutory exclusions. Alternatively, at a minimum, Sierra Club is entitled promptly to receive determinations from EPA stating whether, to what extent, and when the agency will comply with its June requests.

46.     Sierra Club and its members are suffering legal wrongs and being injured by EPA's failures to comply with FOIA, and will continue to suffer and be injured as long as EPA continues to violate its FOIA obligations to respond and produce records to Sierra Club.

47.     The relief requested below will redress the aforementioned wrongs and injuries caused by EPA.

48.     Sierra Club has no other adequate remedy at law to redress these legal violations and injuries.

**<u>SECOND CAUSE OF ACTION</u>**
**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 701-06**

49.     Sierra Club re-alleges and incorporates by reference all the foregoing paragraphs in this Complaint as though fully set forth herein.

50.     In the alternative to Sierra Club's First Cause of Action, EPA's failures to respond to Sierra Club's June requests with indications of whether the agency will comply with those requests, and to produce pertinent non-exempt records in response to said requests, constitutes agency action that is "unlawfully withheld or unreasonably delayed," "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure

14

required by law," 5 U.S.C. § 706(1)-(2).

51.     Sierra Club and its members are suffering legal wrongs and being injured by

EPA's failures to comply with FOIA, and will continue to suffer and be injured as long as EPA

continues to violate its obligations to respond and produce records to Sierra Club as prescribed

by the requirements and principles of the APA.

52.     The relief requested below will redress the aforementioned wrongs and injuries

caused by EPA.

53.     Sierra Club has no other adequate remedy at law to redress these legal violations

and injuries.

## PRAYER FOR RELIEF

WHEREFORE, Sierra Club respectfully requests that this Court enter judgment against

EPA as follows:

1.     Declaring that EPA has violated FOIA (or, in the alternative, the APA) by failing

to provide Sierra Club, within applicable statutory deadlines, with determinations regarding

whether the agency will comply with Sierra Club's June 2017 FOIA requests and, further, by

failing timely to produce all responsive, non-exempt records in response thereto;

2.     Ordering EPA promptly to respond to Sierra Club's June 2017 requests as

statutorily required, and begin searching for, identifying, and producing all responsive, non-

exempt records to Sierra Club as swiftly as practicable and on a rolling basis;

3.     Ordering EPA to produce an index identifying any documents or parts thereof that

it may seek to withhold, along with the basis for any such withholding, in the event that EPA

determines that certain records are exempt from disclosure;

4.     Retaining jurisdiction over this matter in order to rule on any further unlawful and

15

unreasonable delays, any contested assertions by EPA that records are exempt from disclosure,

or any other related issue or dispute;

   5.  Awarding Sierra Club its costs and reasonable attorney fees, *see* 5 U.S.C.

§ 552(a)(4)(E); *cf.* 28 U.S.C. § 2412; and

   6.  Granting any such other and further relief as the Court deems just and proper.


Dated: September 18, 2017      **SIERRA CLUB ENVIRONMENTAL LAW**
               **PROGRAM**


          By: /s/ Matthew E. Miller

          Matthew E. Miller
          District of Columbia Bar # 1015222
          Staff Attorney, Sierra Club
          50 F Street NW, 8th Floor
          Washington, DC 20001
          Tele: 202-650-6069
          Email: matthew.miller@sierraclub.org

          *Counsel for Plaintiff*